### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SERGEY GAPONYUK,** | **Case No.:** |
| **Plaintiff,** | |
| **v.** | **VERIFIED COMPLAINT** |
| **EVGENY ALFEROV, SERGEI KOLOSOVSKII, MIHAIL VERSHININ, ALEXANDER CHERNOV, DAVID BROWN, NATALIA ABRAMOVA** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## NATURE OF ACTION

1.   Plaintiff Sergey Gaponyuk, an individual, (hereinafter referred to as "**Plaintiff**"), by and through undersigned counsel, hereby sues Defendants for damages and equitable relief. As grounds therefor, Plaintiff alleges the following:

2.   This action is brought by Plaintiff, a California Citizen, who lost approximately $3,000,000.00 from a fraudulent investment scheme.

3.   Defendants played a material role in the scheme to steal Plaintiff's assets and, upon information and belief, currently possess all or a significant portion of Plaintiff's stolen property.

4.   As a result of Defendants' fraudulent behavior, Plaintiff has suffered grave economic harm for which he seeks compensatory relief and to recover his stolen assets.

## PARTIES

5.      Plaintiff SERGEY GAPONYUK is an individual, he is a citizen of the state of California, he is domiciled at 817 Solano St., West Sacramento, CA 95605.

6.      Defendant EVGENY IGOREVICH ALFEROV is a citizen of Ukraine, his last known address is Gagarina Avenue 122, Apt. 7, Dnipropetrovsk, Ukraine.

7.      Defendant SERGEI KOLOSOVKSII is a citizen of Ukraine, his last known address is Shidna Street 6, Apt. 1a, Belaya Zerkov, Kiev region, Ukraine.

8.      Defendant MIHAIL VERSHININ is an individual and, upon information and belief, is *sui juris*.

9.      Defendant ALEXANDER CHERNOV is an individual and, upon information and belief, is *sui juris*.

10.     Defendant DAVID BROWN is an individual and, upon information and belief, is *sui juris*.

11.     Defendant NATALIA ABRAMOVA is an individual and, upon information and belief, is *sui juris*.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney's fees, and is an action between citizens of different states/countries.

13.     This Court has personal jurisdiction over Defendants because they committed a tort in this jurisdiction.

14.     Pursuant to 28 U.S.C. §1391(b), the venue is proper in the Eastern District of California because a substantial part of the events or omissions giving rise to this claim occurred within the judicial district.

## GENERAL FACTUAL ALLEGATIONS

### Defendants Contact Plaintiff and Persuade Him to Make Investments

15.     Around May 2022, Plaintiff saw a YouTube advertisement of the CryptoKG crypto exchange platform ("**CryptoKG**") that allowed users to register on the www.cryptokg.io website and begin trading cryptocurrencies. The website www.cryptokg.io is currently unavailable; however, the website www.cryptokg.org is available and is very similar to the www.cryptokg.io website in both appearance and function.

16.     Around the same time, Plaintiff was approached via Telegram messenger by Defendant Alexander Chernov who used the Telegram handle @alexander_chernov1 and introduced himself as Alexander Chernov ("**Alexander**"). Alexander began to persuade Plaintiff to deposit money into CryptoKG.

17.     Plaintiff initially hesitated to deposit money, but Alexander made multiple calls and sent numerous messages throughout May 2022, and established in Plaintiff a sense of trust and reliability. Eventually Alexander persuaded Plaintiff to deposit $500 as a starting amount. Alexander instructed Plaintiff to invest through a crypto-ATM, which is an ATM that converts cash to Bitcoin ("**BTC**") or other cryptocurrencies and sends it to a specified crypto wallet, generally without an identity check.

18.     Around June 10, 2022, Plaintiff sent $408 worth of BTC, after fees, to the wallet address provided by Alexander in order to activate Plaintiff's account and begin trading on CryptoKG.

3

19.     On June 13, 2022, Plaintiff was approached via Telegram messenger by Defendant MIHAIL VERSHININ who used the Telegram handle @mihail_vershinin and introduced himself as Mihail Vershinin ("**Mihail**").

20.     Mihail told Plaintiff that he represents the analytics department of CryptoKG and that Plaintiff's account at CryptoKG had been activated.

21.     Mihail communicated with Plaintiff almost daily, guiding him on which buy and sell orders to place using CryptoKG and persuading him to deposit more funds to increase his profits.

### *Mihail Persuades Plaintiff to Invest Significant Amounts*

22.     Around July 8, 2022, Plaintiff attempted to send $50,000 from his bank account at Bank of America to his Coinbase account in order to then send the funds from his Coinbase Bitcoin wallet to a Bitcoin wallet allegedly belonging to CryptoKG. However, these funds were actually transferred to Mihail's wallet No: bc1qh8dt54yhpyhh4vkefhx82fhzcsyfzxaa60cxmt ("**Mihail's BTC Wallet**").

23.     Bank of America paused the transaction due to possible fraud risks, but Plaintiff persuaded support personnel and informed them that he understood the risks. Plaintiff then proceeded to send $49,999 worth of Bitcoin from his Coinbase Bitcoin wallet No: bc1q5nlpk29584228jfrrstjz46n0k5hf4e9ecuums ("**Plaintiff's Coinbase Wallet**") to Mihail's BTC Wallet believing that it was actually being placed in CryptoKG's wallet to be invested and to be available should Plaintiff chose to withdrawal these funds at any time.

24.     In late July, Mihail continued to persuade Plaintiff to invest additional funds to increase his balance and profits. Plaintiff agreed and attempted to make a transfer from Plaintiff's Coinbase Wallet.

25.     Coinbase did not allow the transfer to Mihail's BTC Wallet, blocked the transaction as suspicious, and prohibited all crypto transfers from Plaintiff's Coinbase Wallet. However, through Coinbase, Plaintiff could still receive crypto, convert it to USD and send it to his bank account.

26.     After this, Mihail advised Plaintiff to use the MEXC crypto exchange ("**MEXC**"), because it has less stringent security checks. Plaintiff, relying on Mihail's advice, then set up a MEXC wallet.

27.     On July 29, 2022, Plaintiff transferred $37,499 worth of USDT[1] from his MEXC wallet to Mihail's wallet No: TJffP75pNZX9VELgLap9k6zu57DrVvH9iS on the Tron blockchain network[2] ("**Mihail's Tron Wallet**") via transfer from MEXC.

28.     On August 1, 2022, Plaintiff transferred $134,999 worth of USDT from his MEXC wallet to Mihail's Tron Wallet.

29.     Around August 5, 2022, Mihail suggested Plaintiff withdraw $10,100 worth of Bitcoin from CryptoKG to his crypto wallet at Coinbase. Plaintiff then deposited these funds into his bank account. This strengthened Plaintiff's belief that CryptoKG was a legitimate crypto exchange platform.

30.     Mihail continued advising Plaintiff on which cryptocurrencies to purchase and when to make the purchases. Mihail instructed him on the exact prices and timing of when to buy and sell using CryptoKG. Mihail told Plaintiff to deposit more funds to obtain a "VIP" status on CryptoKG.

---

[1] Tether (often abbreviated "USDT") is a cryptocurrency hosted on various blockchains, including Bitcoin, Ethereum, and Tron. It is categorized as a "stablecoin," because it was originally designed so that each coin would always be worth $1.00 USD. Thus, one USDT is worth roughly $1.00; and 37,499 USDT are worth approximately $37,499.00. Tether has one of the largest market caps and is one of the most widely-circulated cryptocurrencies in the world.

[2] There are different blockchain networks, such as Bitcoin blockchain, Ethereum blockchain, Tron blockchain, etc. These networks differ in transactions speed and fees, security, and privacy of participants.

31.     Mihail's representations to Plaintiff were that these deposits were being placed into accounts belonging to the crypto exchange and that Plaintiff will be able to make significant profit if his deposits increased and that these deposits would be available to withdrawal at any time. Plaintiff then made three additional transfers to another wallet in the Tron blockchain network controlled by Mihail No: TWBh6KvqEu2pxi93HsboR1QRVZW4MjfWBH ("**Mihail's Tron Wallet 2**", collectively with Mihail's BTC Wallet and Mihail's Tron Wallet, **"Mihail's Wallets"**): (1) $99,999 worth of USDT on August 11, 2022, (2) $49,999 worth of USDT on August 15, and (3) $89,999 worth of USDT on August 26, 2022.

32.     As of August 26, 2022, Plaintiff had made deposits to Mihail's Wallets in the amount of $462,902 and had withdrawn $10,100.

33.     The blockchain transaction history shows that within minutes of receiving funds from Plaintiff, Mihail transferred these funds to either Kuna crypto exchange (a Ukrainian crypto exchange) or Binance (one of the largest crypto exchanges in the world). See table of the transaction history with destination addresses below ("**Destination Addresses**"):

| Destination Address | Amount sent | Date |
|---|---|---|
| bc1qh8dt54yhpyhh4vkefhx82fhzcsyfzxaa60cxmt (Mihail's BTC Wallet) | 2.4 BTC (Received from Plaintiff) | July 15, 2022 |
| 1N8iWg1ARzK4RfstkBcWWif2RN3wMMrWNp (Transit wallet address used by Mihail) | 2.4 BTC | July 15, 2022 |
| bc1qm34lsc65zpw79lxes69zkqmk6ee3ewf0j77s3h (Binance exchange Bitcoin address to which Mihail sent funds) | 4.27 BTC (Additional 1.87 BTC were already on this wallet) | July 15, 2022 |
| TJffP75pNZX9VELgLap9k6zu57DrVvH9iS (Mihail's Tron Wallet) | 37,499 USDT (Received from Plaintiff) | July 29, 2022 |

| | | |
|---|---|---|
| TQ5Qtf3vFFR44pmR3GvK3UMvAZCMerNfxQ (Kuna exchange Tron address, to which Mihail sent funds) | 37,499 USDT | July 29, 2022 |
| TJffP75pNZX9VELgLap9k6zu57DrVvH9iS (Mihail's Tron Wallet) | 134,999 USDT (Received from Plaintiff) | August 1, 2022 |
| TQ5Qtf3vFFR44pmR3GvK3UMvAZCMerNfxQ (Kuna exchange Tron address, to which Mihail sent funds) | 134,999 USDT | August 1, 2022 |
| TWBh6KvqEu2pxi93HsboR1QRVZW4MjfWBH (Mihail's Tron Wallet 2) | 99,999 USDT (Received from Plaintiff) | August 11, 2022 |
| TV6MuMXfmLbBqPZvBHdwFsDnQeVfnmiuSi (Binance exchange Tron address used by Mihail) | 99,999 USDT | August 11, 2022 |
| TWBh6KvqEu2pxi93HsboR1QRVZW4MjfWBH (Mihail's Tron Wallet 2) | 49,999 USDT (Received from Plaintiff) | August 15, 2022 |
| TV6MuMXfmLbBqPZvBHdwFsDnQeVfnmiuSi (Binance exchange Tron address, to which Mihail sent funds) | 49,999 USDT | August 15, 2022 |
| TWBh6KvqEu2pxi93HsboR1QRVZW4MjfWBH (Mihail's Tron Wallet 2) | 89,999 USDT (Received from Plaintiff) | August 26, 2022 |
| TV6MuMXfmLbBqPZvBHdwFsDnQeVfnmiuSi (Binance exchange Tron address, to which Mihail sent funds) | 89,999 USDT | August 26, 2022 |

***Plaintiff Was Not Able to Withdraw His Funds***

34.     In late August, Plaintiff informed Mihail that he needed to withdraw $100,000 from CryptoKG in September for Plaintiff's personal expenses, and Mihail said that this withdrawal was fine.

35.     On September 7, 2022, Mihail told Plaintiff that to withdraw $100,000, he has to place three buy orders, at $90,000 each. Otherwise, CryptoKG's financial department will not allow the withdrawal.

36.     When Plaintiff was placing the last buy order, his account became blocked. Mihail said that Plaintiff typed $900,000 instead of $90,000 as the total value of cryptocurrencies to purchase, and his account was automatically blocked due to insufficient funds. Mihail said he would arrange a loan from CryptoKG for the Plaintiff and would use around $400,000 of his own funds to help pay for part of the Plaintiff's loan.

37.     Around that time, Defendant DAVID BROWN called Plaintiff using Telegram messenger, using the Telegram handle @DB_HeadCrypto, the number +44 7884 798309, and introduced himself as David Brown, head of CryptoKG, and Mihail's boss ("**David Brown**").

38.     David Brown directed Plaintiff to pay the insufficient funds during the call. David Brown stated that half of the $800,000 loan had been paid from Mihail's bonus payments as he was Plaintiff's financial analyst.

39.     Mihail then began persuading Plaintiff to pay "his part" of the loan in the amount of around $400,000 to satisfy the loan; otherwise, Plaintiff's funds would be lost forever. By that time, Plaintiff's balance on CryptoKG was around $3,000,000 as a result of multiple profitable trades prior to blocking, which clearly was more than sufficient to cover the loan.

40.     Mihail then told Plaintiff to pay $113,882.98 before September 21, 2022, and then $113,882.97 before September 27, 2022, in order for Plaintiff to retain access to Plaintiff's funds.

### *Analysis of Defendant's Fraudulent Scheme*

41.     At this point, Plaintiff retained attorneys to advise him in this matter. Research of CryptoKG found multiple reviews indicating that CryptoKG is engaged in fraudulent activity. CryptoKG's website contained Terms and Conditions, a Privacy Policy, an AML Policy, and White Paper, all of which mentioned Coinplas Ltd., a company registered in London, UK, on

June 18, 2021, and closed by authorities for failure to provide any reports since its registration. The director and sole shareholder of Coinplas Ltd. was Joaquin Aranda Romero.

42.    Additionally, Crypto KG's Terms and Conditions described the procedures for making deposits and withdrawals. Nothing in the Terms and Conditions mentioned possible loans from CryptoKG or the inability to withdraw funds due to the loan. See **Exhibit A**, Terms and Conditions.

43.    Using the email address support@cryptokg.io, Mihail sent Plaintiff a letter of guarantee, dated September 20, 2022, and signed by someone named Bence Marton who was registered with the Cyprus Securities Exchange Commission under License CN4496. The letter of guarantee indicated that Plaintiff could withdraw his funds after the payment of $113,882.97. The letter featured the CryptoKG logo at the bottom of the page, company number of Coinplas Ltd. on the stamp, and its' registered address at the bottom of the page, although Coinplas Ltd. was not mentioned directly anywhere in the letter. See **Exhibit B**, the letter of guarantee.

### *Plaintiff's Demand Letter and Requests*

44.    Through his attorneys, Plaintiff sent a demand letter to CryptoKG's known email address: support@cryptokg.io and to Mihail's Telegram account. The demand letter also mentioned Coinplas Ltd., since this company was mentioned on CryptoKG's website, its' identifying information listed on the letter of guarantee dated September 20, 2022, and at that time had not been shut down by authorities. See **Exhibit C**, the demand letter.

45.    CryptoKG did not respond to the email, although the email address was used before and after the delivery of the demand letter to send notifications to Plaintiff. Mihail continued to contact the Plaintiff but did not comment on the substance of the demand letter and

stated that Plaintiff's attorneys are fraudulent and that paying the outstanding loan payment to Mihail was the only legal way to resolve the issue.

46.     When questioned about the legal entity of CryptoKG, Mihail stated that CryptoKG is a decentralized exchange and is not a legal entity, and that clients' funds are stored on a segregated wallet, to which neither CryptoKG nor its employees have access. This representation contradicts the fact that CryptoKG blocked Plaintiff's ability to withdraw funds from his account on numerous occasions. CryptoKG stated that only the Plaintiff has control over his account and is the only one with the ability to close his opened positions, yet CryptoKG closed and annulled Plaintiff's account, as evidenced in an email CryptoKG sent to Plaintiff on October 18, 2022.

47.     Plaintiff continued messaging with Mihail to maintain this necessary avenue of communication despite being highly suspicious of Mihail's intentions.

48.     On October 17, 2022, Plaintiff submitted a withdrawal request for $50,000 from CryptoKG, which was cancelled by CryptoKG. The same day, Plaintiff submitted another $40,000 withdrawal request, which was cancelled by CryptoKG.

49.     Finally, Plaintiff submitted a $100 withdrawal request on October 18, 2022, that was also cancelled by CryptoKG. As of October 18, 2022, Plaintiff's CryptoKG total account balance was listed as $3,785,791.24.

### New Defendants Contact Plaintiff

50.     On October 2022, Defendant NATALIA ABRAMOVA contacted Plaintiff via Telegram messenger from the Telegram handle @natalia_abramova7 and introduced herself as Natalia Abramova ("**Natalia**"), which is likely an alias.

51.     After Natalia made multiple threats to annul Plaintiff's account, Natalia provided Plaintiff with yet another letter of guarantee dated December 13, 2022, signed by a person named Nikos Rentoumis, registered with the Cyprus Securities Exchange Commission under License CN4486. The signature and the seal are the same as in the previous letter of guarantee dated September 20, 2022.

52.     The new letter of guarantee stated that Plaintiff was permitted to withdraw funds if he paid $199,873 to a counterparty, someone named Adrian Bartlett, who was listed as the Plaintiff's trader. In reality, Adrian Bartlett is not Plaintiff's trader, and this was the first time Plaintiff had ever heard of Adrian Bartlett. This information appeared only in the letter of guarantee. Notably, this letter of guarantee specified that $2,985,791.24 was in Plaintiff's Crypto KG account. See **Exhibit D**, the letter of guarantee.

53.     Natalia repeatedly stated to Plaintiff that she would "sell his account on an auction" and retain the profits herself if Plaintiff failed to pay the demanded amount.

54.     Natalia repeatedly stated that Plaintiff's account value was equal to $2,985,791.24.

### *Research of CryptoKG's Website and Other Data*

55.     Research of publicly available information on CryptoKG produced multiple documents strongly indicating that the websites www.cryptokg.io and www.cryptokg.com are directly related and utilize the same methods to defraud customers.

56.     Information related to www.cryptokg.io and www.cryptokg.org, is hidden and redacted on the Whois[3] database; however, information is available regarding www.cryptokg.com, the first version of CryptoKG's website. The availability of information on

---

[3] WHOIS is a database that contains data on the registered users or assignees of an Internet resource, such as a domain name, an IP address block or an autonomous system.

CryptoKG's first website, www.cryptokg.com, is likely due to Defendants being unable to completely erase their history of fraudulent activities.

57.     According to Whois, cryptokg.com's registrant is Sergei Kolosovskii, residing at street Cxodnaya 6, Belaya Zerkov, Kiev region, 09111, Ukraine, telephone +380507544728, email viktor.lobanov78@gmail.com.

58.     A search of the email address above identified the individual named EVGENY IGOREVICH ALFEROV, one of the Defendants in this case.

59.     A social media and open-source data search of the other Defendant, Sergei Kolosovskii listed his personal information as: SERGEI VICTOROVICH KOLOSOVSKII, D.O.B. 11.08.1974, phone number +380975439338.

60.     At all times mentioned here, Defendants SERGEI KOLOSOVSKII and EVGENY ALFEROV were related to and represented CryptoKG and are likely responsible for some or all of its fraudulent activities, including possible ownership of the Telegram messenger accounts belonging to Defendants Mihail, Alexander, David Brown, and Natalia.

61.     Plaintiff duly performed all of his duties and obligations; and any conditions precedent to Plaintiff bringing this action have occurred, have been performed, or else have been excused or waived.

## COUNT I

### BREACH OF CONTRACT

62.     Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

63.     Plaintiff and Defendants have entered into a valid contract for the use of CryptoKG as an exchange platform, where Plaintiff traded stocks and cryptocurrencies. The

contract was established by CryptoKG's Terms and Conditions, which stated that "[t]his user agreement is in accordance with the electronic agreement concluded between you ("User") and CryptoKG (Site), which is drawn up to regulate the use of the website http://cryptokg.io, its content and the services provided by the company. Registration of an account and further use of the CryptoKG resource automatically confirms your familiarization with the User Agreement, as well as your understanding and acceptance of its provisions. You confirm that you accept the terms of the current agreement and possible additions and changes in the future."

64.     Additionally, communications between Plaintiff and Defendants, including Mihail, David Brown, and Natalia, indicated that the relationship between Plaintiff and CryptoKG are regulated by Terms and Conditions. Plaintiff received access to CryptoKG, CryptoKG received commission for Plaintiff's trades, and Plaintiff should have been able to withdraw any amounts earned at any time, which would constitute offer, acceptance and consideration for services rendered by CryptoKG.

65.     Without justification or excuse, Defendants breached their contractual obligations to Plaintiff by failing to permit the withdrawal of $2,985,791.24 from Plaintiff's account.

66.     Defendants' breach has caused actual damages to Plaintiff, and Defendants are liable to Plaintiff for these damages.

67.     WHEREFORE, Plaintiff SERGEY GAPONYUK demands judgment in his favor and against Defendants EVGENY ALFEROV, SERGEI KOLOSOVSKII, MIHAIL VERSHININ, ALEXANDER CHERNOV, DAVID BROWN, NATALIA ABRAMOVA, jointly and severally, for damages in the amount of $2,985,791.24, together with pre- and post-judgment interest thereon, plus costs and expenses of suit to the extent recoverable, and for such other relief as this Court deems just and proper under the circumstances.

## COUNT II

## FRAUDULENT INDUCEMENT

68.     Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

69.     Defendants Mihail, Alexander, David Brown, and Natalia represented and stated to Plaintiff that CryptoKG is a decentralized crypto exchange and that Plaintiff would be able to profit from deposits and withdraw funds at any time, while in reality, CryptoKG was a cover for the personal wallet of Defendants, and Plaintiff was not able to access or withdraw his funds.

70.     At the time Defendants made these representations to Plaintiff, Defendants knew of their falsity.

71.     The misrepresentations, violations of law, fraudulent conduct, and other acts and omissions committed by the Defendants as set forth above constitute false and fraudulent representations.

72.     Defendants made these misrepresentations intending that Plaintiff would rely on them and be induced to pay a substantial amount of money to Defendants.

73.     Plaintiff reasonably and justifiably relied on these fraudulent representations and made several transfers of cryptocurrencies to Defendants.

74.     As a direct and proximate result of the Defendants' fraudulent representations, Plaintiff has suffered damages as set forth above.

75.     WHEREFORE, Plaintiff SERGEY GAPONYUK demands judgment in his favor and against Defendants EVGENY ALFEROV, SERGEI KOLOSOVSKII, MIHAIL VERSHININ, ALEXANDER CHERNOV, DAVID BROWN, NATALIA ABRAMOVA, jointly and severally, for compensatory damages in the amount of $452,802.00, punitive damages,

together with interest, attorney's fees, costs and expenses of suit to the extent recoverable, and for such other relief as this Court deems just and proper under the circumstances.

### COUNT III

### NEGLIGENT MISREPRESENTATION

76.     Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

77.     Defendants misrepresented to Plaintiff that CryptoKG is a decentralized crypto exchange and that Plaintiff will be able to profit from deposits and withdraw funds at any time, while in reality, CryptoKG was a cover for the personal wallet of Defendants, and Plaintiff was not able to withdraw his funds.

78.     At the time Defendants made those representations to Plaintiff, Defendants should have known of their falsity.

79.     Contrary to the representations made to Plaintiff, Plaintiff could not withdraw his funds or manage his account without permission from Defendants.

80.     Plaintiff reasonably and justifiably relied on the above-listed material misrepresentations and omissions of material fact in deciding to entrust Plaintiff's funds to Defendants.

81.     As a direct and proximate result of Plaintiff's reliance on the statements and omissions of material facts made by Defendants, Plaintiff has suffered damages as set forth hereinabove.

82.     WHEREFORE, Plaintiff SERGEY GAPONYUK demands judgment in his favor and against Defendants EVGENY ALFEROV, SERGEI KOLOSOVSKII, MIHAIL VERSHININ, ALEXANDER CHERNOV, DAVID BROWN, NATALIA ABRAMOVA, jointly

and severally, for compensatory damages in the amount of $452,802.00, punitive damages, together with interest, attorney's fees, costs and expenses of suit to the extent recoverable, and for such other relief as this Court deems just and proper under the circumstances.

## COUNT IV

### REPLEVIN

83.     Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

84.     This is an action to recover possession of personal property.

85.     The first piece of property at issue is 2 BTC. Upon information and belief, the U.S. Dollar equivalent value of this personal property as of the time of transaction is approximately $40,000.

86.     The second piece of property at issue is 412,495 USDT.

87.     Upon information and belief, the U.S. Dollar equivalent value of the personal property as of the time of transaction is approximately $412,495.

88.     As of the date of this filing, the personal property at issue is believed to be stored at either Binance or Kuna crypto exchanges, or at some of the Defendants' other wallets, which are impossible to find without requiring Binance and Kuna to provide information.

89.     Plaintiff owned and had the right to immediately possess the personal property – not just a mere right to payment for the value of those cryptocurrencies.

90.     Defendants Mihail, Alexander, David Brown, and Natalia have intentionally exercised control and continue to exercise control over the cryptocurrencies in such a way as to exclude Plaintiff from using or possessing them.

91.     The property has not been taken for any tax, assessment, or fine pursuant to law, nor has it been taken under an execution or attachment against Plaintiff's property.

92.     WHEREFORE, Plaintiff SERGEY GAPONYUK demands judgment in his favor and against Defendants EVGENY ALFEROV, SERGEI KOLOSOVSKII, MIHAIL VERSHININ, ALEXANDER CHERNOV, DAVID BROWN, NATALIA ABRAMOVA, jointly and severally, for compensatory damages in the amount of $452,802.00, punitive damages, together with interest, attorney's fees, costs and expenses of suit to the extent recoverable, and for such other relief as this Court deems just and proper under the circumstances.

## COUNT V

## CONVERSION

93.     Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

94.     At all times material hereto, Plaintiff owned and had the right to immediately possess the cryptocurrency assets that Defendants represented to him, not just a mere right to payment for the value of those assets.

95.     Since July 2022, Defendants have intentionally exercised dominion and control over Plaintiff's funds in the form of BTC and USDT cryptocurrencies in such a manner that deprived Plaintiff of its right to those funds, without lawful justification.

96.     When Plaintiff deposited the cryptocurrency into what he believed was a crypto exchange, the cryptocurrency was actually being deposited into a cryptocurrency wallet that Defendants controlled, and Defendants intentionally took possession of and assumed control over Plaintiff's assets.

97.    Defendants have deprived and continue to deprive Plaintiff of these funds without Plaintiff's consent.

98.    As such, Defendants wrongfully converted Plaintiff's cryptocurrency assets.

99.    Defendants, through actual fraud, misappropriation, conversion, theft, and other means, obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendants should not be permitted to hold.

100.    The cryptocurrency assets at issue are specific, identifiable property and can be traced using the assets of Defendants' account(s) on Binance and Kuna.

101.    Defendants' conduct was intentional, outrageous, and in wanton disregard of Plaintiff's rights to the funds, and warrants the imposition of punitive damages. WHEREFORE, Plaintiff SERGEY GAPONYUK demands judgment in his favor and against Defendants EVGENY ALFEROV, SERGEI KOLOSOVSKII, MIHAIL VERSHININ, ALEXANDER CHERNOV, DAVID BROWN, NATALIA ABRAMOVA, jointly and severally, for compensatory damages in the amount of $452,802.00, punitive damages, together with interest, attorney's fees, costs and expenses of suit to the extent recoverable, and for such other relief as this Court deems just and proper under the circumstances.

## COUNT VI

### UNJUST ENRICHMENT

102.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

103.    Plaintiff conferred a direct benefit upon Defendants without intent to do so by transferring his cryptocurrency assets to Defendants' personal wallets.

104.    Defendants have knowledge of the benefit Plaintiff conferred upon him and have retained such benefit.

105.    The circumstances under which Plaintiff conferred, and Defendants accepted such benefits render Defendants' retention of the benefits inequitable.

106.    Equity requires that Defendants return to Plaintiff the benefits Plaintiff conferred upon Defendants.

107.    WHEREFORE, Plaintiff SERGEY GAPONYUK demands judgment in his favor and against Defendants EVGENY ALFEROV, SERGEI KOLOSOVSKII, MIHAIL VERSHININ, ALEXANDER CHERNOV, DAVID BROWN, NATALIA ABRAMOVA, jointly and severally, for compensatory damages in the amount of $452,802.00, punitive damages, together with interest, attorney's fees, costs and expenses of suit to the extent recoverable, and for such other relief as this Court deems just and proper under the circumstances.

## COUNT VII

### IMPOSITION OF A CONSTRUCTIVE TRUST AND DISGORGEMENT OF FUNDS

108.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

109.    This is an action to impose a constructive trust upon the property taken from Plaintiff that is currently held by Defendants in the Destination Addresses delineated in the table on pages 6-7.

110.    This action further calls for the restoration to Plaintiff of that wrongfully obtained property.

111.   As set forth above, Defendants, through actual fraud, misappropriation, conversion, theft, and other means, obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendants should not be permitted to hold.

112.   The cryptocurrency assets at issue are specific, identifiable property and can be traced in assets of Defendants at the Destination Addresses and elsewhere.

113.   Any and all assets being held by Defendants in the Destination Addresses must be held in trust for Plaintiff's benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from Plaintiff.

114.   The 2 BTC and 462,902 USDT identified herein, which are being held by Defendants or their accomplices in the Destination Addresses, must be disgorged to Plaintiff's benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from Plaintiff.

115.   WHEREFORE, Plaintiff SERGEY GAPONYUK demands judgment in his favor and against Defendants EVGENY ALFEROV, SERGEI KOLOSOVSKII, MIHAIL VERSHININ, ALEXANDER CHERNOV, DAVID BROWN, NATALIA ABRAMOVA, jointly and severally, for compensatory damages in the amount of $452,802.00, punitive damages, together with interest, attorney's fees, costs and expenses of suit to the extent recoverable, and for such other relief as this Court deems just and proper under the circumstances.

## COUNT VIII

**VIOLATION OF CALIFORNIA PENAL CODE § 496 (POSSESSION OF STOLEN PROPERTY)**

116.   Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

20

117.   This cause of action asserts a claim against Defendants for the actual theft of Plaintiff's property as well as for receiving, aiding in concealing, and withholding from Plaintiff the stolen property.

118.   In pertinent part, Cal. Penal Code sec. 496(a) imposes liability upon "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained" and further provides that "[a] principal in the actual theft of the property may be convicted pursuant to this section."

119.   Furthermore, Cal. Penal Code sec. 496(c) provides that "[a]ny person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

120.   Plaintiff's cryptocurrency assets were stolen from him or were obtained by Defendants in a manner constituting theft.

121.   Defendants knew the property was stolen.

122.   Defendants received and had, and, upon information and belief, still have possession of the property stolen from Plaintiff.

123.   Defendants are liable to Plaintiff for three times the amount of Plaintiff's actual damages, the costs of this suit, and all reasonable attorney's fees incurred by Plaintiff in connection herewith.

124.   WHEREFORE, Plaintiff SERGEY GAPONYUK demands judgment in his favor and against Defendants EVGENY ALFEROV, SERGEI KOLOSOVSKII, MIHAIL

21

VERSHININ, ALEXANDER CHERNOV, DAVID BROWN, NATALIA ABRAMOVA, jointly and severally, for compensatory damages in the amount of $1,358,406.00, which is three times the amount of actual damages incurred by Plaintiff, and attorney's fees, costs and expenses of suit to the extent recoverable, and for such other relief as this Court deems just and proper under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SERGEY GAPONYUK demands:

a) A judgment awarding Plaintiff equitable restitution, including, without limitation, restoration of the *status quo ante*, and return to Plaintiff all cryptocurrency or fiat currency taken from him in connection with the investment scam perpetrated upon Plaintiff by Defendants;

b) The equitable imposition of a constructive trust over the property taken from Plaintiff that is currently held by Defendants in the Destination Addresses; and entry of an Order that the wrongfully obtained property be restored to Plaintiff;

c) An award of any and all additional damages recoverable under the law including but not limited to compensatory damages, lost profits, expenses, treble damages, punitive damages, incidental damages, and consequential damages;

d) Pre- and post-judgment interest;

e) Attorney's fees, expenses, and the costs of this action; and

f) All other and further relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: July 3, 2023                                 **KUGELMAN LAW, PC**

By: _____
Alex Johnson
ajohnson@kugelmanlaw.com
21 Tamal Vista Blvd
Suite 202
Corte Madera, CA 94925
*Attorneys for Plaintiff*

**BUZKO KRASNOV**
Evgeny Krasnov
evgeny.krasnov@buzko.legal
Filipp Petkevitch
filipp.petkevitch@buzko.legal
228 Park Ave S
PMB 85451
New York, NY 10003
*Attorneys for Plaintiff*
*Pro Hac Vice Motion forthcoming*

## **VERIFICATION**

I, Sergey Gaponyuk, have read the foregoing Complaint. I have personal knowledge of the factual matters contained herein. I declare under penalty of perjury that such factual matters are true and correct to the best of my knowledge. Executed this ___3___ day of __July__ 2023.

Signature:

Printed Name: _Sergey Gaponyuk_ .

24