UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sergey Gaponyuk,<br><br>                    Plaintiff,<br><br>        v.<br><br>Evgeny Alferov, et al.,<br><br>                    Defendants. | No. 2:23-cv-01317-KJM-JDP<br><br>ORDER |

Plaintiff Sergey Gaponyuk applies ex parte for a temporary restraining order. *See generally* TRO App., ECF No. 4; Mem., ECF No. 4-2. He alleges the defendants participated in a scheme to defraud him of money and cryptocurrency, and he asks the court to freeze several accounts. As explained in this order, the court **grants** the ex parte application. Gaponyuk also seeks early discovery to ascertain the defendants' true identities, addresses, and other contact information. The court **grants** that motion as well, as explained in this order.

**I.     BACKGROUND**

In his verified complaint, Gaponyuk alleges the defendants contacted him through Telegram messenger, a cloud-based messaging service, and persuaded him to deposit money and cryptocurrency into an account at what he describes as an "exchange platform" going by the name "CrytpoKG." *See* Compl. ¶¶ 15–21, ECF No. 1. By August 2022, his deposits totaled in the hundreds of thousands of dollars, *id.* ¶ 32, and he alleges his balance had grown to about

1

1 $3 million as a result of profitable trading, *id.* ¶ 39.  He attempted to withdraw some of these
2 funds, but the defendants delayed, blocked his withdrawal requests and demanded large fees,
3 penalties or similar payments.  *See id.* ¶¶ 34–43.  He hired attorneys, who investigated and sent
4 demand letters to the exchange, but without securing any withdrawals.  *See id.* ¶¶ 44–49.
5 Eventually, someone using the name Natalia threatened to "annul," sell, or seize Gaponyuk's
6 account.  *See id.* ¶¶ 50–54.  Gaponyuk never gained control of his account, and he alleges
7 CryptoKG is a scam that has defrauded others as well.  *See id.* ¶¶ 55–61.

8 Gaponyuk filed his complaint in this court in early July 2023.  He asserts claims for
9 breach of contract, fraudulent inducement, negligent misrepresentation, replevin, conversion and
10 unjust enrichment, and he seeks an order imposing a constructive trust and disgorgement of
11 funds.  *See id.* ¶¶ 62–115.  Finally, he alleges the scheme violated the California Penal Code's
12 prohibition against possessing stolen assets.  *Id.* ¶¶ 116–24.  The complaint lists six defendants by
13 name, but Gaponyuk is unsure of the defendants' true names and identities and addresses, and his
14 attempts to contact them have failed.  Some are last known to have lived in Ukraine.  *See id.*
15 ¶¶ 6–11.  Gaponyuk filed his pending ex parte application for a temporary restraining order and
16 motion for early discovery on the same day he filed his complaint.  His counsel claims their
17 attempts to communicate with the defendants have been unsuccessful.  *See generally* Petkevitch
18 Decl., ECF No. 4-3.

19 **II.     TEMPORARY RESTRAINING ORDER**

20 Gaponyuk asks the court to issue a temporary restraining order freezing the defendant's
21 assets until the court can rule on a motion for a preliminary injunction.  The court must determine
22 at the outset whether it may consider this request without first giving notice to the defendants.  A
23 court may issue a temporary restraining order without notice to an adverse party only if
24 (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and
25 irreparable injury, loss, or damage will result to the movant before the adverse party can be heard
26 in opposition" and (2) "the movant's attorney certifies in writing any efforts made to give notice
27 and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

As summarized above, Gaponyuk's attorney has filed a declaration attesting that the defendants' true names, identities, addresses and other contact information are unknown and that attempts to contact them have failed. *See generally* Petkevitch Decl.; *see also* TRO Checklist, ECF No. 4-1 ("Notice was not provided to Defendants because their identities and current physical addresses are presently either unconfirmed or unknown to Plaintiff. Further, Defendants have not been responsive to messages sent to their previous electronic addresses."). Other federal district courts have granted ex parte relief in situations like this one, noting the risks that cryptocurrencies may rapidly become lost and untraceable. *See, e.g.*, *Jacobo v. Doe*, No. 22-0672, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) (citing *Fed. Trade Comm'n v. Dluca*, No. 18-60379, 2018 WL 1830800, at *2–3 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018)). It is appropriate in these circumstances to consider Gaponyuk's application without first giving notice to the defendants.

The court also must ensure it has authority to freeze the accounts at this early point in the case. "Typically, a court may issue an order to freeze the assets of a defendant only after the claims have been brought to judgment." *Jacobo*, 2022 WL 2052637, at *3 (citing *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999)). A court may freeze assets earlier in the case when a plaintiff seeks equitable relief and preliminary injunctive relief or a temporary restraining order are appropriate. *See In re Focus Media Inc.*, 387 F.3d 1077, 1085 (9th Cir. 2004); *Jacobo*, 2022 WL 2052637, at *3. Because Goponyuk seeks equitable relief in part, including by constructive trust, this court may issue a temporary restraining order freezing the assets in question. *See Jacobo*, 2022 WL 2052637, at *3.

Turning to the request to freeze assets, a court may issue a temporary restraining order upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of such an order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). A temporary restraining order is an extraordinary remedy,

and a plaintiff who requests one must prove that remedy is proper. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).

When courts determine whether to issue a temporary restraining order, they rely on the same factors that guide the evaluation of a motion for a preliminary injunction. *Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (analysis for temporary restraining orders and preliminary injunctions is "substantially identical"). The moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

First, regarding the likelihood of success on the merits, Gaponyuk argues he is likely to prove he is entitled to a constructive trust. *See* Mem. at 15. "A constructive trust is an equitable remedy that compels the transfer of wrongfully held property to its rightful owner." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 908–09 (9th Cir. 2010) (applying California law). "A plaintiff seeking imposition of a constructive trust must show: (1) the existence of a res (property or some interest in property); (2) the right to that res; and (3) the wrongful acquisition or detention of the res by another party who is not entitled to it." *Id.* (citing *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990 (1995)). At this early stage, the allegations in Gaponyuk's verified complaint appear likely to support his request for a constructive trust. Gaponyuk claims he deposited assets in the defendants' exchange and owned them completely. He alleges he had a right to withdraw them, and he alleges the defendants stalled, blocked his withdrawals, threatened him, and took control of his assets.

Second, regarding likelihood of irreparable harm, Gaponyuk argues that unless the court acts now, there is significant risk the defendants will transfer his assets to "untraceable cryptocurrency accounts or to offshore entities organized in unknown locations." Mem. at 15. Cryptocurrency transactions also can often be accomplished anonymously. *See id.* Another judge of this court recently held in a similar case that this risk justified a temporary restraining order. *See Jacobo*, 2022 WL 2052637, at *5 (collecting authority to support conclusion that "the

risk of irreparable harm [was] likely in matters concerning fraudulent transfers of cryptocurrency due to the risk of anonymous and speedy asset dissipation"). The court agrees with that assessment for purposes of this order.

Third, Gaponyuk argues a temporary asset freeze will avoid great harms to him while presenting a relative inconvenience to the defendants. *See* Mem. at 16. It is difficult to reach any firm conclusions about the likely harms to the defendants, having heard nothing from them and knowing nothing about how they are likely to use the accounts. The court finds, however, that a short-term freeze is unlikely to present any great harms. The court can lift this order if the defendants appear and show a continuing injunction would cause them prejudice.

Fourth, Gaponyuk argues a temporary asset freeze will serve the public's interest in stopping, investigating and remedying frauds. *See* Mem. at 16–17. The court agrees. *See, e.g.*, *Jacobo*, 2022 WL 2052637, at *6 (finding similarly in similar case).

For these reasons, the court grants the ex parte application for a temporary restraining order. Rule 65 requires the party seeking a temporary restraining order to give security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). District courts may set the bond at zero "if there is no evidence the party will suffer damages from the injunction." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). No evidence on the current record shows the defendants will be harmed by a temporary restraining order. The court will not require plaintiff to post a bond at this time.

**III.    EARLY DISCOVERY**

As noted, Gaponyuk also asks the court's permission to conduct discovery immediately. Ordinarily, Federal Rule of Civil Procedure Rule 26 permits no discovery "from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). But a plaintiff may request, and a court may grant, permission to begin discovery sooner. *See id.* Courts normally require the party requesting early discovery to show "good cause." *See, e.g.*, *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). A variety of considerations guide the court's decision, including the breadth and purpose of the plaintiff's

5

request, how burdensome it will be to comply, how far in advance of the ordinary timeline the request is made, and whether a preliminary injunction is in force. *Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012).

One reason to permit early discovery might be to "ascertain the identity of a Doe defendant." *Jacobo v. Doe*, No. 22-00672, 2022 WL 2079766, at *2 (E.D. Cal. June 9, 2022) (collecting authority). When a plaintiff requests early discovery for this purpose, courts consider whether the plaintiff has described the Doe defendant specifically enough to show that defendant is a "real person who can be sued in federal court"; what steps the plaintiff has already taken to understand who the Doe defendant is; whether the complaint is likely to withstand a motion to dismiss; and whether discovery will reveal information that will permit the plaintiff to serve process. *Id.* (quoting *ZG TOP Tech. Co. v. Doe*, No. 19-0092, 2019 WL 917418, at *2 (W.D. Wash. Feb. 25, 2019)).

Gaponyuk requests permission to seek discovery from specific cryptocurrency exchanges to obtain information that only they possess: the defendants' "real names, physical addresses, and mailing or contact addresses." Mem. at 19. His complaint describes the defendants with particularity and makes specific allegations about messages he has exchanged with them, which shows they are likely real people who can be named in litigation. He explains what steps his attorneys have already taken to contact and find the defendants and why he cannot do more without discovery. The burdens on the recipient exchanges seem unlikely to be heavy at this stage. The court cannot say now whether the complaint is likely to survive a motion to dismiss, but Gaponyuk's verified allegations do show, for the limited purpose of his ex parte application, he is "likely to succeed" on the merits of his request for a constructive trust. The exchanges may also have contact information and other details that could be useful to identify the defendants. For these reasons, the court finds good cause to permit Gaponyuk to conduct early discovery targeted at obtaining the defendants' real names, addresses, and contact information.

**IV.  CONCLUSION**

The ex parte application for a temporary restraining order and for expedited discovery (ECF No. 4) is **granted**. Plaintiff **shall immediately file** a proposed temporary restraining order

1  and proposed order granting discovery.  Plaintiff must **email a word-processable copy** of the
2  same proposed orders to kjmorders@caed.uscourts.gov.
3         IT IS SO ORDERED.
4  DATED:  July 20, 2023.

                                                                            _____
                                                                            CHIEF UNITED STATES DISTRICT JUDGE